# Kountz *versus* The Citizens' Oil Refining Co., to the use of Fisher.

1. K. sold oil to O. to be delivered December 31st. In a suit for non-delivery of the oil, defendant offered to prove: 1. That about the time of delivery the principal oil dealers made a combination to create an artificial scarcity to compel defendant to pay extravagant prices or be liable for un-natural damages. 2. That the market value of oil was less than it had been raised to by the combination. 3. That plaintiffs, being producers of oil, bound themselves with a railroad not to send oil except by that road, for the purpose of showing a combination to restrict the supply of oil. *Held*, that the rejection of these offers was error.

2. Usually courts are interpreters of their own rules.

3. The affidavit of claim averred that, at the time of delivery, oil was worth 18 cents per gallon; the affidavit of defence averred that by the com-bination oil was raised to 18 cents, and that the fair market price was less than 18 cents. *Held*, that this set out a good defence to a claim based on an inflated price.

4. The averment in the affidavit of defence, that the combination had raised the price to 18 cents, was not an admission that 18 cents was the market value.

November 14th 1872. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Allegheny county:* No. 87, to October and November Term 1872.

This was an action of assumpsit, brought August 30th 1870, by the Citizens' Oil Refining Company, to the use of Frederick Fisher and others, trading as Fisher Brothers, against William J. Kountz.

The plaintiffs' affidavit of claim set out as follows, viz :—That the defendant, by acceptance of the same, entered into the follow-ing contracts :—

" Pittsburg, June 7th 1869.

"Sold to Citizens' Oil Refining Company, for account of W. J. Kountz, one thousand barrels of good, green merchantable crude petroleum, forty gallons to the barrel, gravity to be from forty to forty-six degrees at a temperature of 60° Fahrenheit. To be delivered seller's option, during the present year 1869, in bulk boats or cars as sellers may elect, at the Citizens' Oil Works,

or at any other oil works near Pittsburg, that buyers may direct. Payment to be made cash on delivery, at the rate thirteen and one-half cents per gallon.

WARING & KING,
Brokers."

" Pittsburg, June 17th 1869.

" Sold to the Citizens' Oil & Refining Company, for account of W. J. Kountz, Esq., one thousand barrels, good, green merchantable crude petroleum, forty gallons to the barrel, gravity forty to forty-six degrees, at a temperature of 60° Fahrenheit, to be delivered at seller's option, at any time from the first day of August to the thirty-first day of December, (both days inclusive) 1869, in bulk cars, or bulk boats at or near Pittsburg. If delivered by Allegheny Valley or Western Pennsylvania Railroads, the buyer may designate any other point of delivery on line of said roads; if delivered by water, then at any good landing in or near Pittsburg buyer may direct. Payment to be cash on delivery at the rate of fourteen cents per gallon, on lots as gauged and delivered.

RICHARD T. LEECH."

" On the 31st day of December 1869, the said defendant was notified that the vendee of said oil was ready and willing to receive and pay for the same, and demand was made of the defendant that he deliver the same according to the terms of said contracts respectively; but the defendant, on the day and year last aforesaid, refused to deliver the oil, although the vendee was ready and willing to receive and pay for the same according to the provisions of said contracts respectively.

" On the 31st day of December 1869, the market price of oil of the quality specified in said recited contracts, and at the places of delivery therein mentioned, was 18 cents per gallon, and the vendee sustained damage to the amount of $3400.

(Signed) FREDERICK FISHER."

On the 14th of September 1870, judgment was entered against the defendants by default for $3544.50. The judgment afterwards was opened, and the defendant let into a defence on the condition that he should, within five days, file " a full and specific affidavit of defence, which shall be subject to the same rules of court as if the same had been filed before judgment entered." Under this condition the defendant filed an affidavit of defence, viz. :—

" That the said equitable plaintiffs, Fisher Brothers, between the 7th of June 1869, and the 31st of December 1869, with

[Kountz *v.* Citizens' Oil Refining Co.]

others, entered into a combination to purchase oil here in the county of Allegheny, as well as in the oil-producing districts of Pennsylvania and West Virginia, and keep it out of the market, and thereby create a scarcity and consequently enhance the price, for the purpose of preventing this affiant (and others who had entered into like writings of the character of those on which this writ is brought) from fulfilling his engagements set forth in said writings, so that great gains and profits might be realized, by recovering the difference between the price promised in said writings and the advanced price brought on as aforesaid; and in furtherance of said illegal object, the said plaintiffs (with others, their confederates) used their influence and efforts to prevent oil from being brought to the city of Pittsburg from the oil-producing districts for the purpose aforesaid; and further, the said plaintiffs, with their confederates, for the purpose of preventing this affiant (and others who had entered into like writings with the one sued on) from fulfilling his said engagements, and other engagements of a similar character, and from having oil shipped on the Allegheny Valley Railroad to the city of Pittsburg, from the oil-producing districts of Pennsylvania, monopolized the freight cars of said road (the river, most of the time, being too low to allow shipments by water), and rendered it impossible for this affiant to fulfil his engagements, as well as others of a like kind—and by said illegal proceedings, actions and doings of the said plaintiffs (and others, their confederates), they, the said plaintiffs, did succeed in raising the price of oil between the aforesaid two dates from $13\frac{1}{2}$ cents to 18 cents per gallon, thereby to a great extent contributing to prevent this affiant from being ready and prepared to deliver the 2000 barrels mentioned in said writings, between the dates aforesaid; and this affiant would further state (and is prepared to prove), that the fair market price of oil (such as is described in said contracts) on the 31st of December 1869, was considerably less than 18 cents per gallon. This affiant expects to be able to prove all the above facts on the trial of this case; and this affiant would further aver, and expects to be able to prove, that he would have fulfilled his said engagements had it not been for the doings and actions of said plaintiffs (and others, their confederates) above set forth; and he would further state, that as soon as the market was relieved from the above combination, to wit, within a few days after the 31st of December 1869, he procured and tendered oil, of the character described in said contracts, in fulfilment of the aforesaid contract sued on. And he would further state that the above combination was entered into for the purpose of preventing him from fulfilling his said contracts by the said plaintiffs and their confederates.　*　*　*

　　　　　　　　　　　　　　　　W. J. KOUNTZ."

[Kountz *v.* Citizens' Oil Refinery Co.]

On the trial, April 26th 1872, before Sterrett, P. J., the defendant made the following offers of evidence, which were rejected, and several bills of exceptions sealed:—

"1. To show by Henry M. Long, the witness on the stand, that in the latter part of the year 1869, and particularly on the 31st of December 1869, a combination existed, to which the principal dealers in oil in the county of Allegheny were parties, to withhold all the oil in their control from the market, and to create an artificial scarcity and a fictitious price of oil, with a view of compelling the defendant, and all others holding similar contracts, to pay an extravagant price for the same, or be liable for damages on their contracts, in excess of the natural and fair price of oil, if such combination had not existed. The purpose of this offer is to show that the price of oil on the 31st day of December 1869, asserted by plaintiffs in their affidavit of claim, upon which they have liquidated their judgment, was not the fair and natural price, and that hence the judgment should be abated to such amount as the jury may find under the evidence would be the difference between the contract price and the fair and natural market price.

"2. The market price of oil on the 31st of December 1869, was not 18 cents per gallon, as alleged in the plaintiffs' affidavit of claim, upon the basis of which the judgment was liquidated, but that the actual market price was $14\frac{3}{4}$ cents per gallon. This to enable the jury properly to assess the damages to which, if any, the plaintiffs are entitled.

"3. To show that Fisher Brothers, for whose use this suit is brought, being producers of oil, had prior to the maturity of the contracts in suit, bound themselves, by a contract with the Allegheny Valley Railroad Company, not to send oil to this market, except by the road of said company—this for the purpose of showing that said equitable plaintiffs were parties to an illegal combination to restrict the supply of oil to this market, and thus prevent defendant from filling his contracts, unless subject to the penalty of an artificial and fictitious price thus created."

There was no written charge of the court, other than the rejections of the offers of defendants.

The verdict was for the plaintiffs for $3544.50, with interest from September 14th 1870.

The defendant removed the record to the Supreme Court by writ of error. He assigned for error the rejection of his offers of evidence.

*S. H. Geyer* and *G. Shiras, Jr.*, for plaintiff in error, cited the same authorities as in the preceding case of Kountz *v.* Kirkpatrick, *ante*, p. 376.

*M. W. Acheson,* for defendants in error, also cited the same authorities as in the preceding case.

The opinion of the court was delivered, January 6th 1873, by

AGNEW, J.—In Kountz *v.* Kirkpatrick & Lyons, opinion just read, we have held that a temporary, unnatural and inflated market price, produced by a combination of dealers in oil, for selfish and personal gain, is not the true measure of the value of that article of trade; and that on showing such a state of the market on the day of the performance of his bargain, the defendant could resort to the market prices prevailing just before and after the day, and to other evidence of the true market value of the article, to enable the jury to ascertain the par value of the article on that day, as the measure of the damages for his breach of contract. The refusal of the court below to receive evidence for this purpose in this case was therefore error.

It is argued that this refusal of the court was founded upon a proper interpretation of the affidavit of defence filed by the defendant, by the order of the court in this case, and under its general rule.   It is to be conceded that usually the courts making rules of practice are the best judges of their interpretation and application; but the question here arises upon the true interpretation of the affidavit itself rather than upon the rule.   We have said heretofore that too much nicety should not prevail in considering affidavits of defence, when a solid or substantial defence is really set forth; otherwise the rule will be converted into a snare to entrap justice: Leibersperger *v.* Reading Savings' Bank, 6 Casey 531; Thompson *v.* Clark, 6 P. F. Smith 33.   This affidavit sets forth in unambiguous terms an illegal combination of the plaintiffs and others to buy up oil, create a scarcity and enhance the price, for the very purpose of preventing the defendant from complying with his contract, and to enable them to make great gains.   It sets forth also the means whereby this purpose was accomplished, and that the confederates succeeded in raising the price of oil between the dates named in the affidavit from 13½ cents up to 18 cents per gallon.   It also states that on the 31st of December 1869, the day when the contract was to be performed, the fair market price of oil was considerably less than 18 cents per gallon.   Now, clearly, this would have been a good defence to the inflated, fictitious and temporary price as a proper measure of damages.   But the court below thought that the statement, that the confederates succeeded in raising the price on the 31st of December 1869, to 18 cents a gallon, was an admission of that being the market price.   It was an admission of an inflated market price, but not that it was the fair market value of the oil.   What the defendant averred substantially was, that the market price on that day was the result of an unlawful combination

[Kountz *v.* Citizens' Oil Refining Co.]

to put up the price, but that the fair market value of the oil was considerably less than 18 cents per gallon, which was the price sworn to in the plaintiffs' affidavit of claim.    What more could the defendant say truthfully ?    He could not conscientiously deny that the apparent price in the market on that day was 18 cents ; but he could conscientiously say that the price was not the fair and true market value of the oil on that day, and that the fictitious and inflated price was not the true measure of the damages.    This he did say substantially, and he should have been permitted to prove the truth of his averments.    The affidavit of defence had performed its office, he was now on the trial of its truth, and he clearly had not admitted that 18 cents was the fair market value of oil on that day.

Judgment reversed, and a *venire facias de novo* awarded.

SHARSWOOD, J.—I concur on the authority of Kountz *v.* Kirkpatrick & Lyons.

WILLIAMS, J., dissented.